UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-11864-AH-(SSCx) | Date | July 28, 2026 |
| Title | Janelle Delacruz v. Roc Nation LLC | | |

Present: The Honorable   Anne Hwang, United States District Judge

| | |
|---|---|
| Yolanda Skipper | Not Reported |
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings:   (IN CHAMBERS) ORDER GRANTING MOTION TO DISMISS (DKT. NO. 22)

Before the Court is a Motion to Dismiss ("Motion") filed by Defendant Roc Nation LLC ("Defendant").  Mot., Dkt. No. 22.  Plaintiff Janelle Delacruz ("Plaintiff") filed an Opposition.  Opp'n, Dkt. No. 24.  Defendant filed a Reply. Reply, Dkt. No. 25.  The Court heard oral argument on July 8, 2026.  The Court has considered the parties' papers and the relevant law.  For the following reasons, the Court GRANTS Defendant's Motion to Dismiss.

## I.    BACKGROUND[1]

Plaintiff is a professional model "whose likeness has been featured in advertisements throughout the world."  FAC ¶ 10.  Defendant is a corporation describing itself as "the world's preeminent entertainment company," and "a full-service organization, supporting our diverse roster of talent via artist management,

---

[1] The Court summarizes the allegations in the First Amended Complaint ("FAC"), FAC, Dkt. No. 21, and accepts well-pled allegations as true for purposes of this Motion.

music publishing, touring, production, strategic brand development and beyond." *Id.* ¶ 11.

On April 30, 2025, Defendant photographed Plaintiff for a fee in connection with an advertising and marketing campaign for Megan Thee Stallion's Hot Girl Summer swimwear. *Id.* ¶¶ 12-13. Plaintiff granted consent to Defendant for a limited use of her likeness in Defendant's advertising campaign, which was limited to social media. *Id.* ¶ 13. Defendant thereafter used Plaintiff's likeness on physical, public billboards, including a billboard in Hollywood, California targeting California consumers and similar billboards in at least three (3) other cities in the United States outside of California. *Id.* ¶ 14. On August 12, 2025, Plaintiff's modeling agency sent Defendant an email demanding Defendant immediately cease and desist the unauthorized use of Plaintiff's likeness and demanding payment from Defendant for its past and ongoing unauthorized and illegal usage of Plaintiff's likeness.

On December 16, 2025, Plaintiff commenced this action. Dkt. No. 1. On March 20, 2026, Plaintiff filed the FAC, bringing causes of action against Defendant for common law misappropriation; false endorsement/false advertising under the Lanham Act, 15 U.S.C. § 1125(a); and statutory misappropriation under California Civil Code § 3344. *See generally* FAC. On April 20, 2026, Defendant filed the instant Motion.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A dismissal under a 12(b)(6) motion can be based on either a "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citation omitted). On a 12(b)(6) motion, courts accept as true all well-pleaded allegations of material fact and construe them in a light most favorable to the non-moving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not"

suffice.  *Id.* (internal quotation marks and citation omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Leave to amend a dismissed complaint should be granted unless it is clear the complaint cannot be saved by any amendment.  Fed. R. Civ. P. 15(a); *see Manzarek*, 519 F.3d at 1031.  A "district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).  Otherwise, leave to amend shall be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).

## III.    DISCUSSION

### A.    State Law Claims

Defendant argues that Plaintiff's common law misappropriation and statutory misappropriation claims are preempted by the Copyright Act, 17 U.S.C. § 301.  Mot. at 3-8, 11-15.

"To sustain a common law cause of action for commercial misappropriation, a plaintiff must prove: '(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury.'" *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (quoting *Eastwood v. Superior Court,* 149 Cal. App. 3d 409, 417 (1983), *superseded by statute on other grounds as stated in KNB Enters. v. Matthews,* 78 Cal. App. 4th 362 (2000)).  "In addition to the common law cause of action, California has provided a statutory remedy for commercial misappropriation under California Civil Code § 3344."  *Id.*  "Under section 3344, a plaintiff must prove all the elements of the common law cause of action.  In addition, the plaintiff must allege a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose."  *Id.*[2]

"Under 17 U.S.C. § 301, States are expressly prohibited from legislating in the area of copyright law."  *Id*. at 1003.  The Ninth Circuit has adopted a two-part

---

[2] The Court assumes that Plaintiff has plausibly alleged her claims because Defendant's motion to dismiss does not address the merits of these claims.

test to determine whether a state law claim is expressly preempted by the Copyright Act.

> [Courts] must first determine whether the "subject matter" of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 1021 and 103.  Second, assuming that it does, [courts] must determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders.

*Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006) (citing *Downing*, 265 F.3d at 1003).

### 1.    <u>Subject Matter</u>

"Sections 102 and 103 of the Act identify the works of authorship that constitute the 'subject matter' of copyright." *Id.* at 1139.  "Section 102 of the Act extends copyright protection to 'original works of authorship fixed in any tangible medium of expression . . . from which they can be . . . reproduced, . . . either directly or with the aid of a machine or device.'" *Id.* (citing 17 U.S.C. § 102(a) (alteration in original)).  "Works of authorship include," among other things, "pictorial" works.  17 U.S.C. §§ 102(a), (a)(5).  "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of time of more than transitory duration." *Id.* § 101.

Plaintiff clarified at the hearing on this motion that her claims arise from Defendant's display on billboards of photographs taken from the April 30 photo shoot.  "There is . . . no doubt that a photograph is 'sufficiently permanent' to permit it to be perceived 'for more than transitory duration.'  The 'subject matter' of the state law claim[s]'—the photographs—therefore appears to fall within the subject matter of copyright." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1011 (9th Cir. 2017) (citations omitted).

However, this does not end the matter.  "[W]hen the 'use' of a likeness forms the 'basis' of a publicity-right claim, the claim is not preempted." *Id*. at 1012.  "The crux of the issue is thus deciding *when* a publicity-right claim seeks to vindicate misuse of an individual's likeness, as opposed to merely interfering with the distribution, display, or performance of a copyrighted work." *Id*. at 1012-13.

---

Thus, the Court is to look at "the way in which one's name or likeness is affected by the *use* of the copyrighted work." *Id*. at 1013.

For example, in *Downing*, a clothing retailer purchased a photograph depicting surfers for a surf-themed catalog for the retailer's products, notating the surfers' names at the bottom of the photograph. 265 F.3d at 999-1000. "The plaintiffs sustained injury to their individual 'personas' because their likenesses were exploited commercially without their consent. The plaintiffs were not seeking to use the right of publicity simply to prevent 'publication' of an artistic, visual work." *Maloney*, 853 F.3d at 1013, 1018 (finding, in contrast to *Downing*, the plaintiffs did not "allege that their names and likenesses were ever used in connection with the sale of any merchandise. Nor do they contend that their likenesses were ever used in any advertising" and that "'use for trade' considerations can almost perfectly distinguish between the cases finding preemption and those permitting publicity-right claims to proceed"). In *Laws*, the Ninth Circuit "observed that 'Abercrombie went well beyond the mere republication of the photograph.'" *Id*. at 1013 (citing *Laws*, 448 F.3d at 1141). "*Laws* strongly implies that misuse of an individual's likeness is the 'basis' of a publicity-right claim when the name or image is exploited in advertising or on merchandise. It correspondingly implies that one's likeness does *not* form the basis of a publicity-right claim when 'the tort action challenges control of the artistic work itself,' or involves 'the mere republication of the photograph'." *Id*. at 1014 (citations omitted).

More generally speaking, however, the Ninth Circuit has considered other factors besides commercial versus expressive use in determining the way in which one's likeness is affected by the use of the copyrighted work. The Ninth Circuit has "distinguished cases where the defendant obtained a license to a song and then imitated the singer's voice, which [the Ninth Circuit] said did not necessitate preemption because misappropriation of the voice *itself* was the subject of those publicity-right claims." *Id.* at 1015. "By contrast, [the court] concluded 'it is clear that federal copyright law preempts a claim alleging misappropriation of one's voice when the entirety of the allegedly misappropriated vocal performance is contained within a copyrighted medium.'" *Id*. (citation omitted). Thus, when a "right of publicity claim is based exclusively on what [a plaintiff] claims is an unauthorized duplication of her vocal performance of the song," the claim is preempted. *Laws*, 448 F.3d at 1141.

Similarly, the Second Circuit has looked to whether the complaint contains "allegations that [the plaintiff's] name or likeness was extracted in any way to appear independently from how it originally appeared in the archival episodes, or that the excerpts were manipulated in some manner to bring his identity into focus." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 304 (2d Cir. 2022). In *Melendez*, the allegations were "directed at the copyrighted works in which [the plaintiff] appears—the archival episode recordings—and not toward any separate use of his name or likeness. In other words, portions of the actual copyrightable works are what Sirius XM is allegedly reproducing and disseminating, not Melendez's name or likeness independent of the excerpts." *Id*. *Melendez* contrasted cases where "the plaintiff alleged that the defendant manipulated or imitated the plaintiff's identity or likeness or used the plaintiff's identity or likeness to support a product that was independent from the copyrighted work itself." *Id*. at 306. And in *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1913 (1996), the underlying challenge was also to the unauthorized distribution and republication of copyrighted works where the California Court of Appeal found "the only alleged exploitation occurred through the distribution of the actor's performance in a motion picture." *Laws* observed of *Fleet* that, "[i]n effect, the plaintiffs' right of publicity claim was a question of control over the distribution, display or performance of a movie CBS owned." *Laws*, 448 F.3d at 1143.

Plaintiff focuses her argument on where and how the photographs were used, namely, in commercial advertising. To be sure, as discussed above, the Ninth Circuit analyzes whether the plaintiff's likeness was used in connection with the sale of merchandise or advertising. However, the Court does not believe this ends the inquiry here because Plaintiff's focus ignores that the photographs also began as commercial advertising, unlike in *Downing*.[3] In determining how Plaintiff's likeness is affected by the use of the photographs in commercial advertising, what Plaintiff is objecting to is the "unauthorized distribution and republication of a copyrighted work, not the exploitation of [her] likeness on an unrelated product or in advertising." *Maloney*, 853 F.3d at 1016. In other words, the entirety of the

---

[3] Although at the hearing on this motion, Plaintiff argued that there are "zero cases in the United States of America" holding that a commercial advertising campaign use of a plaintiff's likeness is preempted by the Copyright Act, Plaintiff also cites no binding authority where the photograph allegedly misused was itself part of the commercial advertising campaign.

misappropriated likeness is contained within a copyrighted or copyrightable[4] medium, as in *Laws*.  Here, as clarified by Plaintiff at the hearing on this motion, her claims are based on the unauthorized use of commercial photographs in a different advertising medium, *i.e.*, a billboard rather than social media.  Thus, Plaintiff consented to the commercial use of the photographs and her claims arise from the distribution or duplication of those photographs.

In addition, although not dispositive, the Court finds persuasive a leading treatise's explanation that "it is necessary to revert to the *Restatement*'s threshold definition of the pertinent tort, which refers to one 'who appropriates the commercial value of a person's identity by using without consent' that individuals' *persona*."  1 Nimmer on Copyright § 1.17[B][3][b][i] (2026) (citation omitted).  Thus, a claim "deserve[s] to be preempted . . . [involving] facts of a party trying to suppress the very copyrighted work to which she had earlier voluntarily contributed."  *Id*.  Moreover, "the conclusion cannot follow mechanically that all advertising is actionable."  *Id*.  "[A]lthough sometimes given conduct on defendant's part might be presumptively wrong (using plaintiff's image for advertising), the conclusion can flip if plaintiff participated in the same domain (plaintiff sat for an advertising photo)."  *Id*.  The Third Circuit has adopted this reasoning:  "David Nimmer has proposed a two-part framework for handling cases at the intersection of copyright, the right of publicity, and contract.  First, we look to how the copyrighted work featuring the plaintiff's identity is used."[5]  *Facenda v.*

---

[4] The parties do not address who specifically owns the copyright to the photographs.  However, the "analysis here does not depend on whether the works at issue are actually copyrighted because a claim can still be 'subject to the possibility of statutory preemption' if the work is within the 'subject matter of copyright' or, in other words, is 'copyrightable.'"  *Melendez*, 50 F.4th at 304 n.6 (citation omitted).

[5] The court found that express preemption did not apply in part because the state law claim was not equivalent to an exclusive right, which the Court discusses below.  *Facenda*, 542 F.3d at 1027.  "Courts have found conflict preemption where state laws interfere with federal copyright law's goal of leaving some works, or uses of works, in the public domain."  *Id*. at 1028.  In light of the overlap between express and implied preemption, the Court discusses *Facenda*'s analysis in the context of express preemption here.  *See, e.g.*, *Maloney*, 853 F.3d at 1017 n.10 (acknowledging that *Facenda* "proceeded with the [preemption] analysis under the banner of 'conflict preemption,' but it treated the framework as similarly applicable to the context of express preemption under section 301").  In any event, the

---

*N.F.L. Films, Inc.*, 542 F.3d 1007, 1029 (3d Cir. 2008).  "The second part of Nimmer's framework addresses the way that contracts affect the preemption analysis.  Nimmer proposes that courts should examine the purpose of the use to which the plaintiff initially consented when signing over the copyright in a contract.  He argues that the proper question in cases involving advertising and a contract between the plaintiff and the defendant—such as our case—is whether the plaintiff 'collaborated in the creation of a copyrighted advertising product.'"  *Id*. at 1030.

Although this test has not been expressed in the Ninth Circuit, the Third Circuit's opinion (and the Nimmer treatise) is based on a reading of binding Ninth Circuit opinions such as *Laws*.  *See id*. at 1030-31.  The Court notes that Plaintiff voluntarily participated as a model for the Hot Girl Summer swimwear campaign.  *See* FAC ¶¶ 12-13.  In doing so, she "collaborated in the creation of a copyrighted advertising product," and "even if she . . . can also adduce a contractual dispute" regarding the scope of placement of such photographs, her collaboration "precludes her from using the right of publicity to squelch exploitation of that copyrighted work for its intended purpose of appearing on" Hot Girl Summer swimwear advertisements.  1 Nimmer on Copyright § 1.17[B][3][b][i].  In *Facenda*, the claim was not preempted because although "Facenda consented to participation in films documenting NFL games, [he did] not [consent to] an advertisement for a football video game," and "[t]he release form Facenda signed did not implicitly waive his right to publicity, the core of which is the right not to have one's identity used in advertisements.  In fact, the release specifically preserved that right by carving out endorsements."  542 F.3d at 1031.  Here, however, Plaintiff concedes that she consented to being photographed for an advertising campaign.

### 2.     **Equivalent Rights**

As to the equivalent rights prong,

> [t]o satisfy the 'equivalent rights' part of the preemption test . . . the alleged misappropriation . . . must be equivalent to rights within the general scope of copyright as specified by section 106 of the Copyright Act.  Section 106 provides a copyright owner with the exclusive rights

---

reasoning would apply to implied or conflict preemption and would be an independent basis to dismiss Plaintiff's claims.

of reproduction, preparation of derivative works, distribution, and display. To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an extra element which changes the nature of the action.

*Del Madera Props. v. Rhodes & Gardner,* 820 F.2d 973, 977 (9th Cir. 1987), *overruled on other grounds, Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994). In *Laws*, the Ninth Circuit rejected the argument that a right of publicity claim under California Civil Code § 3344 "requires proof of a use for a 'commercial purpose,' which is not an element of a copyright infringement claim." *Laws*, 448 F.3d at 1144. The court concluded: "[t]he mere presence of an additional element ('commercial use') in section 3344 is not enough to qualitatively distinguish [the plaintiff's] right of publicity claim from a claim in copyright. The extra element must transform the nature of the action." *Id.* "Although the elements of [the plaintiff's] state law claims may not be identical to the elements in a copyright action, the underlying nature of [the plaintiff's] state law claims is part and parcel of a copyright claim." *Id.* Thus, although the plaintiff's claims were based on the premise that the defendant reproduced a sample of her song for commercial purposes without consent, under the Copyright Act, "a copyright owner has the exclusive right 'to reproduce the copyrighted work'" and the additional element of "commercial purpose" did not change the underlying nature of the action. *Id.* at 1144-45 (citations omitted).[6] The Second Circuit has similarly explained that "[r]ather than simply performing a mechanical search for extra elements, courts must instead engage in a holistic evaluation of the nature of the rights sought to be enforced and then make a determination whether the state law action is *qualitatively* different from a copyright infringement claim." *Melendez*, 50 F.4th at 302 (citation modified).

---

[6] In *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 907 (7th Cir. 2005), the court considered a claim by a model who appeared in advertisements, commercials, and runway shows authorizing the use of her likeness within a certain time frame for a certain product. The defendant used her likeness beyond the authorized time period. *Id.* The court concluded that a similar right of publicity law in Illinois required an additional element of "commercial purpose" and the "fact that the photograph itself could be copyrighted, and that defendants owned the copyright to the photograph that was used, is irrelevant to the IRPA claim." *Id.* at 910. However, this Court is bound by the Ninth Circuit's analysis of "equivalent rights" in *Laws*.

Here, as in *Laws*, the commercial use element does not qualitatively distinguish the right of publicity claim from a claim in copyright because the claim involves acts of distribution for commercial use.  Thus, the claim does not involve additional elements beyond the reproduction of copyrighted works.  Because the claims do not differ qualitatively from a copyright infringement claim, the Court finds the claims to be preempted.

Accordingly, Plaintiff's state law claims are preempted, and Defendant's Motion as to Plaintiff's state law claims is GRANTED, with leave to amend.

## B.   Lanham Act Claim

Defendant argues that Plaintiff's Lanham Act claim fails under either a false endorsement or false advertising theory.  Mot. at 8.

Section 43(a) of the Lanham Act provides for a civil cause of action against

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]

15 U.S.C. § 1125(a)(1).  Section 43(a) provides two bases for liability:  "(1) false representations concerning the origin, association or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress or other device ('false association' [or 'false endorsement']), and (2) false representations in advertising concerning the qualities of goods or services ('false advertising')."  *Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir. 1992), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) (citations omitted).

A false advertising claim requires that a plaintiff allege:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;
(2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;
(3) the deception is material, in that it is likely to influence the purchasing decision;
(4) the defendant caused its false statement to enter interstate commerce; and
(5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012).

A false endorsement claim is available where a defendant's conduct has allegedly created "a likelihood of confusion as to whether plaintiffs were endorsing [a defendant's] product." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 812 (9th Cir. 1997). "A false endorsement claim based on unauthorized use of a celebrity's identity is a type of false association claim . . . which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *Waits*, 978 F.2d at 1110. "The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused" as to the sponsorship or approval of the goods bearing the marks at issue in the case." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). In determining whether there exists a likelihood of confusion, courts in the Ninth Circuit look to the factors enumerated in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). In *Downing*, the Ninth Circuit restated the *Sleekcraft* factors for application in cases involving celebrity plaintiffs as follows:

1. the level of recognition that the plaintiff has among the segment of the society for whom the defendant's product is intended;
2. the relatedness of the fame or success of the plaintiff to the defendant's product;
3. the similarity of the likeness used by the defendant to the actual plaintiff;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. defendant's intent on selecting the plaintiff; and

8. likelihood of expansion of the product lines.

265 F.3d at 1007-08.

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citation omitted). Courts have found that the unauthorized display of a person's image can constitute an actionable misleading statement under the Lanham Act "by confusing consumers to think that [plaintiff] held a similar affinity and reverence for its products, without paying for or even asking for such right.'" *See, e.g.*, *Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 975-76 (S.D. Cal. 2020).

Here, Plaintiff does not allege that the photograph is literally false. *See, e.g.*, *Gibson v. BTS North, Inc.*, 2018 WL 888872, at *4 (S.D. Fla. Feb. 14, 2018) ("Given that Plaintiffs have not shown that the images themselves were altered, it is clear that the images in the advertisements are actual images of Plaintiffs. They therefore are not literally false."). Rather, Plaintiff appears to allege that the photograph is false because it is misleading. *See* FAC ¶ 29 ("Defendant made a false statement of fact, i.e., that Plaintiff consented to and endorsed Defendant's advertisement of Plaintiff's likeness on billboards, in a commercial advertisement about Defendant's own or another's products."). At oral argument, Plaintiff's counsel clarified the theory of falsity here: that the billboard's display of Plaintiff's photograph is misleading because it suggests that Plaintiff endorsed the Hot Girl Summer swimwear to *billboard* viewers when she sought to endorse the swimwear to *social media* viewers *only*. However, by agreeing to participate in the photoshoot for the advertising campaign, Plaintiff effectively lent her endorsement of the Hot Girl Summer swimwear. Plaintiff does not allege that there was anything about that endorsement that communicated a limitation to certain viewers only, such that the photograph was misleading when it was posted on a billboard. Moreover, Plaintiff does not allege a theory of likelihood of confusion where the only plausible confusion alleged is who was to receive the message, not anything about the message itself. Plaintiff's theory does not fit neatly into the *Sleekcraft* factors because, as discussed, Plaintiff does not plausibly allege a theory of falsity or explain what the confusion from a consumer's perspective here is, where Plaintiff did actually endorse the product, but purportedly just not to the particular

viewer.  Again, nothing in the billboard is alleged to have reflected any message regarding who the targeted audience was meant to be.[7]

Accordingly, Defendant's Motion as to Plaintiff's Lanham Act claims is GRANTED, with leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED** with leave to amend.  Plaintiff must file and serve any amended complaint within **fourteen (14) days** of this Order.  Failure to do so may result in dismissal of this action without further notice.

**IT IS SO ORDERED.**

---

[7] In light of this, the Court does not address Defendant's arguments regarding the sufficiency of Plaintiff's allegations that she would be recognized by consumers, nor does the Court resolve factual questions such as whether Plaintiff is "unknown" or "anonymous" rather than a "celebrity" for purposes of succeeding on such a claim, or whether consumer deception was likely to result from the billboard's display of the photograph.